**SILLS CUMMIS & GROSS P.C.**
Gregory A. Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973-643-7000
Facsimile: 973-643-6500
Email: gkopacz@sillscummmis.com

*Counsel to Public Service Enterprise*
*Group Long Island LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NYKILAS J. DINUBILA<br><br>           Debtor. | Chapter 7<br><br>Case No. 20-72042 (AST) |
| PUBLIC SERVICE ENTERPRISE GROUP<br>LONG ISLAND LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>NYKILAS J. DINUBILA<br><br>           Defendant. | Adv. Pro. No. 20-08101 (AST) |
| NYKILAS J. DINUBILA,<br><br>           Third-Party Plaintiff,<br><br>     v.<br><br>SHARYN L. PADULA AND DAVID<br>PADULA<br><br>           Third-Party Defendants. | |

## AMENDED COMPLAINT

Plaintiff, Public Service Enterprise Group Long Island LLC ("**PSEG**"), by its attorneys, files this Amended Complaint against Debtor-Defendant Nykilas J. Dinubila (the "**Defendant**") to determine the non-dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4) and 523(a)(6), and alleges on knowledge as to itself and its own acts and otherwise upon information and belief, as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding is brought in connection with the above-captioned chapter 7 case.

2.      The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and 1334(b).

3.      Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

4.      This is core proceeding under 28 U.S.C. § 157(b).

5.      PSEG consents to the entry of final orders or judgments by this Court.

## THE PARTIES

6.      Plaintiff PSEG is a limited liability company organized pursuant to the laws of the State of New York and maintains its principal place of business at 333 Earle Ovington Boulevard, Uniondale, New York.  PSEG operates the Long Island Power Authority's electric system.

7.      Defendant is an individual with a residence located at 6 Awixa Place, Selden, New York (the "**Residence**").

## FACTUAL BACKGROUND

8.      On May 13, 2020 (the "**Petition Date**"), Defendant filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**").

9.      Prior to the Petition Date, on or around March 3, 2009, Defendant executed an

2

*Application & Contract* (the "**Application & Contract**"),[1] establishing an account pursuant to which: (i) electrical and related services would be provided to the Residence, and (ii) Defendant agreed to pay all applicable rates and charges for such services.

10.     In the Application & Contract, the Defendant falsely stated that he was employed at GMS Drum Co.

11.     On or around February 21, 2018, PSEG performed an inspection of the electrical meter at the Residence (the "**Inspection**") and determined that the meter had been tampered with so as to cause the meter to indicate less electricity had been delivered to the Residence than had been actually delivered (the "**Tampering**").

12.     In addition, the Inspection revealed the following damage to PSEG's property as a result of the Tampering: (i) the snap lock had been altered and worn; (ii) the red seal and the rear of the lock was missing; (iii) there was an inversion wear pattern on the meter blades and the blades were worn to copper and the meter jaws had wear on them; (iv) the bypass mechanism was badly worn; and (v) the paint was worn off the meter pan cover and the latch due to excessive access to the meter pan.

13.     Subsequently, PSEG issued to the Defendant a report of the Inspection and related documentation (collectively, the "**Inspection Report**"),[2] which reflected amounts owed for unpaid electricity for the period from March 26, 2012 to February 21, 2018 ($16,827.56), *plus* the costs of the Inspection and remediation of the Tampering ($2,050.73).

14.     Between March 26, 2012 and February 21, 2018, PSEG provided Defendant with electricity and related services pursuant to the terms of the Application & Contract.

15.     The electrical meter associated with the Defendant's account is PSEG's property.

---

[1] A true and correct copy of the Application & Contract is attached as **Exhibit 1**.
[2] A true and correct copy of the Inspection Report is attached as **Exhibit 2**.

16.     The Tampering was not caused by a defective meter or meter malfunction.

17.     As of the Petition Date, Defendant was indebted to PSEG in the total amount of no less than $18,878.29 (the "**Claim**").

## RELEVANT LEGAL AUTHORITY

18.     Under NEW YORK PENAL LAW §165.15(4) (Theft of services), proof that an electrical meter:

> has been tampered with or otherwise intentionally prevented from performing its functions . . . shall be presumptive evidence that the resident to whom the service which is at the time being furnished by or through such equipment has, with intent to avoid payment by himself or another person . . . created or caused to be created with reference to such equipment, the condition so existing.

19.     In addition, NEW YORK PENAL LAW §165.15(4) provides that:

> A person who tampers with such a device or equipment without the consent of the supplier of the service is presumed to do so with intent to avoid, or to enable another to avoid, payment for the service involved.

20.     Subsections (a)(2), (4) and (6) of section 523 of the Bankruptcy Code provide, in pertinent part, as follows:

> (a)   A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor for any debt . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> >
> > (B) use of a statement in writing –
> >
> > > (i) that is materially false;
> > >
> > > (ii) respecting the debtor's or an insider's financial condition;
> > >
> > > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

7634889

(iv) that the debtor caused to be made or published with intent to deceive . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . .

**CLAIMS FOR RELIEF**

I.    **First Claim for Relief – 11 U.S.C. § 523(a)(2)(A)**

21.    PSEG repeats and re-alleges each and every allegation set forth above as though set forth fully herein.

22.    In the Application & Contract, Defendant materially misrepresented that he was employed at GMS Drum Co.

23.    Defendant knew the representation regarding his employment was false at the time it was made.

24.    Defendant made the false representation regarding his employment deliberately and intentionally with the intention and purpose of deceiving PSEG and to induce PSEG to supply electricity and related services to the Residence.

25.    PSEG actually and justifiably relied upon the Application & Contract and the Defendant's false representation regarding his employment in agreeing to supply electricity and related services to the Residence and suffered damages as a direct and proximate result thereof.

26.    The Claim constitutes a claim for money, property, services, or an extension, renewal, or refinancing of credit obtained by Defendant's false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

27.    Based on the foregoing, the Claim should be excepted from Defendant's discharge pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

7634889

## II.        Second Claim for Relief – 11 U.S.C. § 523(a)(2)(B)

28.    PSEG repeats and re-alleges each and every allegation set forth above as though set forth fully herein.

29.    In the Application & Contract, Defendant stated that he was employed at GMS Drum Co.

30.    Defendant's statement in the Application & Contract regarding his employment was made in writing.

31.    Defendant's statement in the Application & Contract regarding his employment was materially false.

32.    Defendant knew the representation regarding his employment was false at the time it was made.

33.    Defendant's statement in the Application & Contract regarding his employment was a statement in respect of his financial condition.

34.    PSEG reasonably relied upon the Application & Contract and the Defendant's false statement regarding his employment in agreeing to supply electricity and related services to the Residence and suffered damages as a direct and proximate result thereof.

35.    Defendant made the false statement regarding his employment in the Application & Contract with intent to deceive and to induce PSEG to supply electricity and related services to the Residence.

36.    The Claim constitutes a claim for money, property, services, or an extension, renewal, or refinancing of credit obtained by Defendant's use of a statement in writing – (i) that is materially false, (ii) respecting the debtor's or an insider's financial condition; (iii) on which PSEG reasonably relied; and (iv) that the Defendant caused to be made or published with intent to deceive.

6

7634889

37.     Based on the foregoing, the Claim should be excepted from Defendant's discharge pursuant to section 523(a)(2)(B) of the Bankruptcy Code.

**III.     Third Claim for Relief – 11 U.S.C. § 523(a)(4)**

38.     PSEG repeats and re-alleges each and every allegation set forth above as though set forth fully herein.

39.     Defendant unlawfully and with fraudulent intent, converted and misappropriated electricity and related services from PSEG.

40.     The Claim constitutes a claim against Defendant for larceny.

41.     Based on the foregoing, the Claim should be excepted from Defendant's discharge pursuant to section 523(a)(4) of the Bankruptcy Code.

**IV.     Fourth Claim for Relief – 11 U.S.C. § 523(a)(6)**

42.     PSEG repeats and re-alleges each and every allegation set forth above as though set forth fully herein.

43.     Defendant willfully and maliciously damaged PSEG's property through the Tampering with the electrical meter.

44.     The Claim constitutes a claim against Defendant for willful and malicious injury by Defendant to PSEG or its property.

45.     Based on the foregoing, the Claim should be excepted from Defendant's discharge pursuant to section 523(a)(6) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

46.     The Claim may also be non-dischargeable under additional provisions of the Bankruptcy Code or pursuant to applicable law, and PSEG may have other claims or causes of action against the Defendant.  All of PSEG's rights, remedies, claims, causes of action and defenses are expressly reserved and preserved.

7634889

## <u>CONCLUSION</u>

**WHEREFORE**, PSEG respectfully requests the entry of a judgment: (a) declaring the

Claim non-dischargeable under Bankruptcy Code section 523(a); (b) awarding PSEG its costs,

disbursements and legal fees; and (c) awarding PSEG such additional relief as is just and proper.

Dated: February 11, 2021

SILLS CUMMIS & GROSS P.C.

/s/ *Gregory A. Kopacz*
Gregory A. Kopacz, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973-643-7000
Facsimile: 973-643-6500
Email: gkopacz@sillscummmis.com

*Counsel to Public Service Enterprise Group
Long Island LLC*

**Exhibit 1**

**Application & Contract**

| CY. | DIST. | RT. | FOLIO | S. |
|-----|-------|-----|-------|-----|
| 5 | 8 | 70 | 65 3574 | 3 |

**LIPA** Long Island Power Authority

**APPLICATION & CONTRACT**

RATE CODE ELECTRIC 180

**P R I N T**

APPLICANT'S FULL NAME: Nykilas   LAST   D, Nubila   FIRST   MIDDLE

SERVICE ADDRESS   NUMBER STREET: Le Awixa Pl.   APT NO   VILLAGE Seldon   NY   ZIP 11784

NEAREST CROSS STREET   PREMISES OCCUPIED AS   STARTING ON DATE: 2/15/09   TELEPHONE ☐ HOME ☐ OTHER (631)-846-4306   VILLAGE   ☐ OWN ☑ RENT   ZIP

MAILING ADDRESS (IF OTHER THAN ABOVE)   NUMBER STREET   APT NO.

FORMER ADDRESS: 6 Awixa Pl. 6 Selden NY 11784   NUMBER OF YEARS HERE 2   FORMER ACCOUNT NUMBER

EMPLOYED BY: Gms Drum Co   ADDRESS 853-C Conklin St.   OCCUPATION Fin. Dept.   TELEPHONE 293-4235   NUMBER OF YEARS HERE 3

THE APPLICANT AGREES THAT HE WILL PAY THE APPLICABLE RATES AND CHARGES FOR THE ELECTRIC SERVICE HEREIN REQUESTED AND THAT HE WILL BE BOUND BY AND COMPLY WITH THE RULES AND REGULATIONS OF THE COMPANY APPLICABLE THERETO.

X _____ SIGNATURE OF APPLICANT/AGENT (AGENT - ALSO PRINT YOUR NAME ON LINE BELOW)   DATE 3-3-09

SS# ▮▮▮▮▮▮

| ☐ CUT ON | ☐ CHANGE RATE | ☐ NEW JOB NO. | DEPOSIT AMOUNT | DEPOSIT RECEIPT NO. | DATE PAID | COMPANY ACCEPT. | DATE |
|----------|---------------|---------------|----------------|---------------------|-----------|-----------------|------|

## LIPA CERTIFICATE OF COMPLIANCE

New Electric Service to      ☐ Existing Residential Construction or:      ☐ New Residential Construction

Expansion of Electric for purpose of:      ☐ Providing Electric Heat    – or –      ☐ New Building Addition

The undersigned certifies that the: ☐ 1 or 2 Family Residence  – or– ☐ Multi-Family Residence – or– ☐ Mobile Home ☐ Existing dwelling  – or–

☐ Addition to existing dwelling described on reverse side of this application is or will be in compliance with the "Minimum Insulation Standards for Residential Construction of Buildings" issued by the New York State Public Service Commission and adopted by the Long Island Power Authority, not later than 30 days after time of occupancy or 30 days after completion of expansion of existing electric service for the purpose of providing electric heat.

It is understood that electric service will not be connected or will be disconnected (as is the current practice) if upon inspection the structure is found not to be in compliance with the conditions set forth.

The undersigned certifies that a properly executed copy of this certificate will be delivered to the owner prior to closing in the case of new construction, or, on completion of the new building addition, or, in the case of expansion of existing electric service for the purpose of providing electric heat, on completion of the electric work; and agrees that any successor in title shall be deemed a beneficiary of the undertakings described in this certificate.

Dated _____

_____

Signature of Builder or Contractor

FC11311

**Exhibit 2**

**Inspection Report**

*Revised October 28, 2014*

PSEG LONG ISLAND
*We make things work for you.*

## REVENUE INTEGRITY *ELECTRIC* FIELD INVESTIGATION REPORT

| FIELD INVESTIGATOR(S): **75000250** | WORK FUNCTION: **UMS** |
|---|---|

| DATE: **2/21/18** | START: **8:30** | FINISH: **10:00** | CUSTOMER CONTACT? ☐ YES  ☒ NO |
|---|---|---|---|

| NAME: **Nykilas Dinubila** | CONDITION SHOWN TO (NAME/RELATIONSHIP): |
|---|---|
| STREET: **6 Awixa place** | **Met with Sharyn Padula/ claims to be customers mother** |
| TOWN: **Selden** | |
| ACCOUNT NO.: **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-3**   RATE: **180** | LOAD CHECK? ☒ YES  ☐ NO  ☐ REFUSED |

### FOUND

| DATE: **2/21/18** | MTR #: **99304285** | INDEX: **30501** | ☐ MRP: SEE SHEET | CONSTANT: **1** | SCALE: |
|---|---|---|---|---|---|

| DEM. FND: | DEM. LEFT: | TYPE: ☒ SOCKET ☐ A BASE ☐ 2W ☒ 3W ☐ 4W | VOLTS: **240** |
|---|---|---|---|

SEAL NO.: ☐ INTACT ☒ MISSING ☐ CUT ☐ ALTERED ☐ OTHER  MTR. LOC. **7**

MTR PAN LOCKED? ☒YES ☐NO  LOCKING DEVICE: ☐ PSL ☐ TPR ☐ PTL ☐ M/L ☐ PADLOCK ☒ OTHER

LOCK CONDITION: ☐ GOOD ☒ ALTERED ☐ BROKEN ☐ MISSING ☐ OTHER:

BYPASS FOUND? ☒ YES ☐ NO / BYPASSING? ☐ YES ☒ NO  TYPE BYPASS: ☒ MANUAL ☐ AUTO.

C.T. SIZE:  POLARITY OK? ☐ YES ☐ NO  SHUNTED? ☐ YES ☐ NO

### INSTALLED

| DATE: **2/21/18** | MTR #: **80402525** | INDEX: **00000** | TYPE: **RXR-SD** | CONSTANT: **1** | SCALE: |
|---|---|---|---|---|---|

LOCKING DEVICE: ☒ PSL ☐ TPR ☐ PTL ☐ M/L ☐ PADLOCK ☒ OTHER: **P/S**

SEAL NOS: **PSL #1070446 % P/S# 361233**

| SERVICEMAN'S NAME: | EMP. NO.: | DEPT.: |
|---|---|---|

| FOUND | | LEFT | | METER TEST RESULTS | | | |
|---|---|---|---|---|---|---|---|
| VOLTS | AMPS | VOLTS | AMPS | FL | **99.64** | SHOP | ☒ |
| AØ **123** | 1 | AØ **123** | 1 | LL | **100.01** | FIELD | ☐ |
| BØ **122** | 1.5 | BØ **122** | 1.58 | FA | **99.72** | SHELF | **88** |
| CØ | | CØ | | DEMAND | | OFFICE | **Brentwood** |
| Ø TO Ø **245** | | Ø TO Ø **245** | | TEST DATE | **3/1/18** | PHOTOS | ☒ |

### CONDITIONS FOUND IN FIELD

☐ POTENTIAL SHUNT OPEN ☐ FOREIGN OBJECT IN METER ☒ BLADES WORN/PITTED ☐ ADJ. SCREWS MARRED
☐ ATTACHMENTS TO POT. SHUNT ☐ JUMPERS CONNECTED TO METER ☒ JAWS WORN/PITTED ☐ HOLE IN METER GLASS
☐ SHUNT SCREWS MARRED ☐ JUMPERS IN PAN ☐ DIALS OUT OF ALIGN/MISSING ☐ WRONG MTR/WIRING
☐ POTENTIAL COIL BAD ☐ UPSIDE DOWN METER ☐ REG. SCREWS MARRED/MISSING ☐ TAPS AT WEATHERHEAD
☐ FOREIGN METER ☐ INNER SEAL MISSING ☐ BEARING SCREWS MARRED ☐ UNDERGROUND TAP

UNMETERED SERVICE SUSPECTED ☐          UNBILLED SERVICE ☐          TAMPERING SUSPECTED ☒

### LOAD CHECK ANALYSIS / INSPECTION

| APPLIANCE | WATT/BTU | APPLIANCE | WATT/BTU | APPLIANCE | WATT/BTU | APPLIANCE | WATT/BTU |
|---|---|---|---|---|---|---|---|
| A/C CENT | | HOT TUB | | FREEZER | | DRYER | |
| A/C ROOM | | POOL SIZE | | REFRIG. | | FLOOD LTS. | |
| A/C ROOM | | POOL PUMP | | OVEN | | LIGHTS | |
| A/C ROOM | | WTR. PUMP | | RANGE | | T.V. | |
| A/C ROOM | | WATER BED | | BROILER | | MISC. | |
| AIR COMP. | | BASEBRD. | | MICROWV. | | MISC. | |
| DEHUMID. | | SPACE HTR. | | DISHWSHR. | | MISC. | |

*Revised October 28, 2014*



## REVENUE INTEGRITY *ELECTRIC* FIELD INVESTIGATION REPORT

| HEAT PUMP | | WTR. HTR. | | WASH MCH. | | | MISC. | | |
|---|---|---|---|---|---|---|---|---|---|

**IF SUMMER & HAS A/C, IS THE A/C ON?**  ☐ YES ☐ NO   **IF YES,** SPECIFY WHICH ONE(S):

**IF SUMMER & HAS POOL, IS PUMP ON?**  ☐ YES ☐ NO   **COMMENTS:**

**IF HAS HOT TUB,** IS IT ON? ☐ YES ☐ NO   **IS IT COVERED?** ☐ YES ☐ NO   **IF ON,** WHAT IS THE TEMPERATURE?  °

**COMMENTS:** Tampering

**IS THERE ADDTIONAL CASE DOCUMENTATION?** ☒ YES ☐ NO   **IF YES,** WHAT TYPES?  ☒ SEE WORKBOOK  ☒ PHOTOS

☐ SEALS ☒ LOCKS ☐ JUMPERS ☐ OTHER   **IF OTHER, SPECIFY:**

FIELD INVESTIGATOR(S): **75000250**

DATE: **2/21/18**

CUSTOMER NAME: **Nykilas Dinubila**

ACCOUNT NO.: **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-3**

FIELD SUPERVISOR INITIALS _____       DATE _____

*REMARKS:*

A UMS was submitted on Saturday 11-21-2015, stating that the bypass for this account was opened.

I made numerous attempts to access this electric service. The gate is usually locked, with a large dog near the meter pan area.

I visited this account on 2-13-2018. There was no answer at the front door; however it appeared an adult woman was watching me. I was able to take a picture from over the locked gate (the large dog was not outside today). Electric meter # 99304285 was at index 30421. The large dog was let outside while I obtained the picture. It appears this dog is used as a deterrent to read or access the electric meter for this account from within the customers yard, however can be read over the fence from a neighbor's yard. The picture is on the shared drive.
*Note- It appears from over the fence that the snap lock is intact on the meter pan; however the red seal is missing from the snap lock.

Eventually on 2-21-2018 I was able to gain access to the electric service for this account. A woman answered the front door today. She stated she was the wife of the customer of record "Nykilas Dinubila" (eventually she admitted she was the mother of the customer of record). Based on her NYS driver's license, the woman's name is Sharyn Padula. I obtained a picture of her driver's license, see shared drive. She allowed me access to the electric meter. Electric meter # 99304285 was at index 30501. I found the snap lock tampered with and the red seal missing. The snap lock appeared to be locked, however upon examination of it; I found the lock to be glued to the meter pan latch. The rear of the lock was missing. This lock can be opened at will, and then simply glued closed. The snap lock appears to be extremely worn and handled (the snap lock is in an evidence bag attached to this report). Upon inspection of electric meter # 99304285, it has been tampered with, there is an inversion wear pattern on the blades, this meter has been pulled and inverted many times, and the blades are worn to copper. I took this meter into my possession today (currently located in the Brentwood evidence room, location # 88, and shop tested within range on 3-1-2018). While inspecting the meter pan, I found the bypass mechanism so badly worn, due to excessive engagement, the jaws have wear, and the paint was worn off of the meter pan cover and the latch due to excessive access to this meter pan; I explained to Sharyn Padula that the meter pan needs to be replaced. She handed her cell phone to me, the person on the phone stated he was the customer of record, Nykilas Dinubila. I explained to the person on the phone that the meter

*Revised October 28, 2014*

**REVENUE INTEGRITY *ELECTRIC* FIELD INVESTIGATION REPORT**



pan must be replaced, he said ok. I then installed new AMI electric meter# 804025225 at index 00000x1. I then locked and sealed the meter pan closed. I photographed the as found and left condition (pictures on our shared drive). I asked to perform a load analysis, Sharyn Padula as well as the person on the cell phone denied me access for a load analysis for today, then stated maybe in the future. I asked to interview this person on the cell phone, he refused.

Today, after I left this electric account location, 2-21-2018. A call was taken by a PSEGLI customer representative. The representative believed this call was a security concern; due to the fact the caller wanted exclusively the PSEGLI worker to return to the account location that replaced the electric meter today. Due to this concern, I scheduled corporate security to accompany me to this account location on 2-22-2018. Corporate security discovered the customer of record does in fact have a NYS pistol permit.

On 2-22-2018 I visited this account with corporate security and another investigator. I spoke with Sharyn Padula at the front door. I asked what she needed me back here for. She called her husband, David Padula and handed me the phone. I asked how I could help him. He said he was David Padula, I said you sound exactly like the person I spoke with on the phone yesterday, and you stated yesterday you were Nykilas Dinubila, he said well I really own the house and today he is David Padula. I asked him who was tampering with the utility lock on his meter pan. He stated he glued the lock closed one time only during hurricane Sandy, and the meter pan has never been opened since then (even though the meter reader found the bypass engaged on 11-21-2015) I explained he needed the meter pan replaced due to the bypass having excessive wear. He said he will have it replaced. I asked if I could perform a load analysis, he said yes. I unlocked the meter pan; I left a seal so his electrician could access the meter pan.

Today 2-22-2018 Sharyn Padula granted me access to perform a load analysis. See attached below.

On 2-27-2018 I visited this account location. I found the meter pan replaced. Sharyn Padula gave me the removed meter pan into my possession, currently located in the Brentwood evidence room location, "floor". I photographed the new meter pan and then locked and sealed it closed.


Ok to back bill this account for tampering.
Please pull a 6 year history statement and review the billing.

*Revised October 28, 2014*

**REVENUE INTEGRITY _ELECTRIC_ FIELD INVESTIGATION REPORT**



## Load Analysis

Living room
1, 65 " TV
1, cable box
1, electric fireplace 2KW
1, large stereo

Kitchen
1, range oven 8kw
1, exhaust fan
3, 25 watt bulbs
1, 25 cu. Ft. refrigerator/freezer
1, microwave oven 1.5kw
1, toaster oven 1.5kw

Bathroom #1
1, exhaust fan
2, 25 watt bulbs

Bedroom #1
1, 32" TV
1, X-box game

Bedroom #2
1, 19" TV
1, cable box

Bathroom #2
1, Jacuzzi tub
1, stereo
3, 10 watt bulbs

Master bedroom
1, 42"TV
1, cable box
1, 17" monitor
1, desk top computer

*Revised October 28, 2014*

**REVENUE INTEGRITY _ELECTRIC_ FIELD INVESTIGATION REPORT**



Basement
21, large concert speakers
1, large amplifier
1, 65" projection TV
5, 10 watt bulbs
1, 32"TV
1, 2 cu. Ft. refrigerator
1, 8,000 btu air conditioner
1, electric space heater 1.5kw
1, washing machine, large
1, electric clothes dryer

Boiler room
1, 100,000 btu oil fired boiler
1, circulator pump .7 amps
1, oil burner head ¼ hp
1, 24"TV

Outside load

Shed no access, electric wires leading to shed from house.

1, 10 cu. Ft. chest freezer
2, small ponds, approx. 1/16 hp  pumps, each pond
1, swimming pool, not in use at this time, pump size approx. ½ hp
4, 65 watt bulbs

Porch
1, window air conditioner approx. size 12,000 btu's

**PSEG Long Island**
PO Box 9083, Melville, NY 11747-9083



Direct Dial Number: (631) 844-3824

May 17, 2018

Nykilas Dinubila
6 Awixa Place
Selden, NY 11784

Re: Account No. 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-3

Dear Mr. Dinubila:

During an inspection of your electric meter and service on February 21, 2018 we found the following conditions: the snap lock had been altered and worn, the red seal and the rear of the lock was missing, there was an inversion wear pattern on the meter blades and the blades were worn to copper and the meter jaws have wear on them. In addition to the above, our investigator found the bypass mechanism badly worn, and the paint was worn off the meter pan cover and the latch due to excessive access to the meter pan.

The estimated unrecorded consumption of 89898 KWH from March 26, 2012 to February 21, 2018 the amount of $16,827.56 is being charged to the above account. This consumption was based on the load check performed at the premises.

In addition to the back bill of unrecorded usage, the total amount of $2,050.73 has been charged to the above account. This amount represents the cost of our investigation, including time and materials. Enclosed, please find the billing calculations used to determine the above charge.

We have estimated the unrecorded consumption on the fairest possible basis; however, if there are any pertinent factors which you feel we may have been unaware of, please bring them to our attention.

We will be pleased to provide you with any additional information regarding this matter that you might require and/or to discuss arrangement for payment.

Yours truly,

*Ms. S. Aste*

PSEG Long Island
Revenue Integrity Department

Rate 180

NAME: Nykilas Dinubila
STREET: 6 Awixa Place
TOWN: Selden, NY 11784
ACCT.# 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-3

Enter Tax % **0.02500**

| Date | # Days | Billed Consump. | Billed Amount | Billed Tax | | Summer 61.01 | Winter 47.61 | *Revised Consump. | Revised Amount | Revised Tax |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/26/12 | | | | | | | | | | |
| 05/22/12 | 57 | 609 | $122.63 | $3.07 | | | 2714 | 2714 | $482.25 | $12.06 |
| 09/26/12 | 127 | 1687 | $349.74 | $8.75 | | 7748 | | 7748 | $1,471.60 | $36.79 |
| 05/24/13 | 240 | 2568 | $571.77 | $14.37 | | | 11426 | 11426 | $2,195.06 | $54.88 |
| 09/20/13 | 119 | 1478 | $336.89 | $8.42 | | 7260 | | 7260 | $1,588.87 | $39.72 |
| 05/22/14 | 244 | 2014 | $489.79 | $12.24 | | | 11617 | 11617 | $2,437.49 | $60.94 |
| 09/25/14 | 126 | 1072 | $240.09 | $6.00 | | 7687 | | 7687 | $1,352.21 | $33.81 |
| 05/27/15 | 244 | 2339 | $540.08 | $13.51 | | | 11617 | 11617 | $1,897.52 | $47.44 |
| 09/26/15 | 122 | 1518 | $311.37 | $7.79 | | 7443 | | 7443 | $1,443.21 | $36.08 |
| 05/26/16 | 243 | 2957 | $588.34 | $14.72 | | | 11569 | 11569 | $2,038.38 | $50.96 |
| 09/27/16 | 124 | 1831 | $389.94 | $9.75 | | 7565 | | 7565 | $1,518.39 | $37.96 |
| 05/24/17 | 239 | 2334 | $512.41 | $12.80 | | | 11379 | 11379 | $2,137.36 | $53.43 |
| 09/23/17 | 122 | 963 | $318.78 | $7.97 | | 7443 | | 7443 | $1,539.09 | $38.48 |
| 02/21/18 | 151 | 1390 | $319.11 | $7.98 | | | 7189 | 7189 | $1,406.74 | $35.17 |
| | | | | | | | | | | |
| | 2158 | 22760 | $5,090.94 | $127.37 | | 45147 | 67511 | 112658 | $21,508.17 | $537.70 |

| Revised Consump : | 112658 | Revised Amount: | $21,508.17 | Revised Tax: | $537.70 |
|---|---|---|---|---|---|
| Billed Consump: - | 22760 | Billed Amount: - | $5,090.94 | Billed Tax: - | $127.37 |
| Debited Consump: | 89898 | Debited Amount: | $16,417.23 | Debited Amount: | $410.33 |

Comments:

**TOTAL :** $16,827.56

# REVENUE INTEGRITY

**NAME:** Nykilas Dinubila
**STREET:** 6 Awixa Place
**TOWN:** Selden, NY 11784
**ACCT.#** 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-3

### COST OF INVESTIGATION ANALYSIS

**RATE:** **180**

| PART 1: Personnel Costs |
| --- |

A. Field Investigator

| Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- |
| 2/21/18-4/2/18 | 19.00 | $64.50 | $1,225.50 |
| 02/22/18 | 2.00 | $64.50 | $129.00 |
| | | | $0.00 |
| | | Sub-Total : | $1,354.50 |

B. Serviceperson

| | Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- | --- |
| #1 | 02/22/18 | 2.00 | $42.39 | $84.78 |
| #2 | 02/22/18 | 2.00 | $42.39 | $84.78 |
| | | | | $0.00 |
| | | | Sub-Total : | $169.56 |

C. Meter Tester

| Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- |
| 03/01/18 | 0.50 | $43.84 | $21.92 |
| | | | $0.00 |
| | | Sub-Total : | $21.92 |

D. Clerical

| Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- |
| | | | $0.00 |
| | | | $0.00 |
| | | Sub-Total : | $0.00 |

E. Billing Representative

| Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- |
| 05/17/18 | 7.50 | $58.92 | $441.90 |
| | | | $0.00 |
| | | Sub-Total : | $441.90 |

F. Supervisor, Field

| Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- |
| | | | $0.00 |
| | | | $0.00 |
| | | Sub-Total : | $0.00 |

G. Supervisor, Office

| Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- |
| | | | $0.00 |
| | | | $0.00 |
| | | Sub-Total : | $0.00 |

H. Legal

| Date | Time (Hrs) | X Hrly. Rate = | Cost |
| --- | --- | --- | --- |
| | | | $0.00 |
| | | | $0.00 |
| | | Sub-Total : | $0.00 |

# REVENUE INTEGRITY

## Summary: Personnel Costs

| Total (A-H)   times | | Transportation Costs | = | Total Personnel Cost |
|---|---|---|---|---|
| $1,987.88 | + | $16.00 | = | $2,003.88 |

## PART 2:  Materials Costs

A.  Metering Equipment

| Meter Type | Size | Manufact. | Q | Cost |
|---|---|---|---|---|
| MX | CL-200 | Landis & Gyr | 1 | $26.39 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Sub-Total :  $26.39

B.  Locking Devices

| Lock Type | Manufact. | Unit Cost | Q | Cost |
|---|---|---|---|---|
| Power Safe Lock | Highfield | $12.66 | 1 | $12.66 |
| Plastic Seal | Brooks | $1.20 | 1 | $1.20 |
| Snap Lock | Highfield | $2.50 | 1 | $2.50 |
|  |  |  |  |  |

Sub-Total :  $16.36

C.  Hardware  (Wire and Misc. Materials)

| Item | Unit Cost | Quantity | = | Cost |
|---|---|---|---|---|
| Digital Photos | $0.10 | 41 |  | $4.10 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Sub-Total :  $4.10

## Summary:  Materials Costs

Total Materials Cost

$46.85

**GRAND TOTAL OF**
Personnel & Materials Costs

$2,050.73

Comments: